IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TONY TUNG THIEN NGUYEN,<br>*Plaintiff*, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 18-5019 |
| | : | |
| ALLSTATE INSURANCE COMPANY,<br>*Defendant*. | : | |

## MEMORANDUM

### I. Introduction

Plaintiff Tony Tung Nguyen, a prisoner currently incarcerated at the State Correctional Institute in Somerset, filed *pro se* a Second Amended Complaint against Allstate Vehicle and Property Insurance Company ("Allstate") based in part on allegations that Allstate acted in bad faith by failing to provide insurance coverage for a collapsed carport and related damage.[1] ECF No. 15. Allstate moved for summary judgment contending it was entitled to judgement as a matter of law on Plaintiff's remaining claim for bad faith on four grounds: 1) because Allstate was correct in its coverage decision; 2) because Allstate had a reasonable basis for its coverage decision; 3) because Allstate relied upon the advice of experts; and 4) because Plaintiff misrepresented material facts during the adjustment of the claim. ECF No. 51. Because Allstate had a reasonable basis for

---

[1] Plaintiff's claims for breach of contract, negligence, and unjust enrichment were all previously dismissed by this Court upon Defendant's Motion to Dismiss. ECF Nos. 31 & 32.

1

its coverage decision, the Court finds that Allstate is entitled to judgment as a matter of law on Plaintiff's bad faith claim.

## II. Background

Allstate issued a House & Home Policy to Plaintiff for the property located at 1840 Hart Lane, Philadelphia, Pennsylvania 191234 effective October 24, 2016. ECF No. 51-5 at p. 7 ("Location of property insured: 1840 Hart Ln, Phila., PA 19134-3536"). On or about March 16, 2017, Plaintiff reported a claim to Allstate involving a carport collapse and stated that "the collapse must have occurred on March 15, 2017, during the snow storm while plaintiff was asleep." ECF No. 51-6; ECF No. 53 at p. 3. According to the First Notice of Loss Snapshot, Plaintiff described the loss as a "garage collapse onto vehicle." *Id.* On the day Plaintiff reported his loss to Allstate, Allstate's representative contacted Plaintiff to schedule an inspection of the property for March 22, 2017, and requested photographs from Plaintiff of the damage. ECF No. 51-7 at p. 24.

The day before the scheduled inspection, on March 21, 2017, Plaintiff contacted Allstate and informed it that he had started demolishing the structure. *Id.* at pg. 21. Plaintiff said that he had contacted someone to board up and shore up the property. *Id.* Allstate advised Plaintiff not to perform any additional demolition work and not to discard any of the contents. *Id.* Additionally, the Allstate adjuster assigned to the claim contacted Plaintiff that day to confirm the

2

inspection of the property on March 22, 2017. *Id.* at p. 19.

On March 22, 2017, the Allstate adjuster inspected the loss. *Id.* at pp. 17-18. The adjuster noted that Plaintiff had removed the damaged property prior to the inspection, that Plaintiff had constructed an enclosed area off the side of his dwelling, and that Plaintiff represented to the adjuster that he secured a permit for the construction of the structure next to his dwelling. *Id.* After inspecting the property, the adjuster requested that the file be reviewed by management before settling the claim. *Id.*

On the following day, an Allstate supervisor reviewed the claim. *Id.* at p. 17. Upon reviewing the photographs, the supervisor noted that the roof system of the carport was not attached to the home and that the framing appeared inadequate and not compliant with code. *Id.* He also noted that there was no evidence of roof materials present, that the rafters appeared undersized with minimal pitch, and that the loss appeared to him to be the result of inadequate construction. *Id.* Consequently, the supervisor approved an engineer to inspect the property. *Id.*

On March 29, 2017, Plaintiff contacted Allstate stating that he found additional damage to the structure. *Id.* at p. 16. Upon being advised to contact the adjuster to inform him about the additional damage, Plaintiff informed the adjuster that the collapse of the carport caused damage to the dwelling in the form of cracked stucco, interior cracking of certain walls, and a flooded basement. *Id.*

3

On April 4, 2017, the Allstate supervisor noted that the structure that collapsed was located at 1838 Hart Lane, a separate lot from the insured property, which was located at 1840 Hart Lane.[2] *Id.* The supervisor also noted that the insured property at 1840 Hart Lane was owned not by Plaintiff, but rather by his brother, Andrew Nguyen. *Id.*

Around this time, Plaintiff also provided Allstate with an inventory list of contents damaged from the carport collapse. *Id.* Specifically, Plaintiff claimed damage in excess of $90,000, which included household items, clothing, and a watch. *Id.* at p. 15. When the claim was initially reported by Plaintiff to Allstate, Plaintiff claimed that there was possible damage to auto parts under the structure. In light of the possible ownership issues with the properties and the increase in claimed damages, the claim was referred to Allstate's Special Investigations Unit ("SIU"). *Id.*

On April 6, 2017, SIU sent Plaintiff a detailed letter informing him that the file was transferred to another adjuster for handling. ECF No. 51-9. That same day, Allstate spoke with Plaintiff and scheduled an inspection for April 12, 2017. ECF No. 51-7 at p. 13. During that telephone call, Plaintiff informed Allstate that he had discarded a few boxes of tile, and Allstate again informed Plaintiff not to

---

[2] Plaintiff contends that the Allstate policy included "the lot next to [1840 Hart Lane]," *see* ECF No. 53 at p. 3, but the policy indicates no such agreement.

4

discard any more contents before they could be inspected. *Id.* The SIU adjuster traveled that day to the property to photograph the loss and the contents. *Id.* at pp. 10-11.

On the following day, the SIU adjuster conducted a title search of 1840 Hart Lane, the insured property, and the neighboring lot at 1838 Hart Lane. *Id.* at. p. 12. The SIU adjuster's investigation of property documents from the City of Philadelphia revealed that neither the insured property at 1840 Hart Lane nor the property where the loss occurred at 1838 Hart Lane were owned by Plaintiff. *Id.* Indeed, the insured property is owned by Plaintiff's brother, Andrew Nguyen. *Id.* Plaintiff contends however, that he purchased the property at 1840 Hart Lane from his brother on March 29, 2014 "under owner's self financing, also known as a purchase through land contract." ECF No. 53 at p. 1.

On April 12, 2017, the SIU adjuster conducted an inspection of the loss in the presence of both Plaintiff and the structural engineer. *Id.* at pp. 9-10. The SIU adjuster noted in his claim notes that the cause and origin of the damage was an "apparent collapse of the roof of structure attached to home in lot next to insured residence." *Id.* While on site, the SIU adjuster also took Plaintiff's recorded statement, in which he stated the following: that he was the owner of the property located at 1840 Hart Lane; that he built the carport himself and it cost him approximately $35,000; that he did not obtain a permit to build the structure; that

5

he personally compiled the content list that was provided to Allstate; and that while all of the items on the list were damaged, some of those items were not owned by Plaintiff. *Id.*

On April 20, 2017, Allstate sent Plaintiff a Reservation of Rights letter. ECF No. 51-10. Shortly thereafter, the structural engineer issued a report noting the following conclusions regarding the investigation of the property and cause of loss:

1. The physical evidence observed at the site indicated that the collapse of the west portion of the carport was the result of a failure of the fasteners used to attach the ledger board to the north wall of the building that was caused by snow loads imposed on the carport roof on March 14 and March 15, 2017 and that insufficient fastening of the ledger board along the west end of the carport contributed to the failure.

2. The physical evidence observed at the property indicated that the moisture contact with the wall and ceiling finishes within the hall bathrooms was caused by rainwater intrusion and not caused by the recent collapse of the carport that reportedly occurred on March 15, 2017.

3. The physical evidence observed at the property indicated that the separation between the wall and floor surface along the north wall within the 1st floor level of the building, the separation in the wall coverings at the intersection between the south wall of the building and the 2nd level floor beam, and the poor operation of the west bedroom window were caused by long-term and on-going differential movement of the building foundation and not caused by the recent storm event of the carport collapse that reportedly occurred on March 15, 2017.

ECF No. 51-11 at p. 4.

After the engineer issued the report, Allstate engaged legal counsel in order to determine whether coverage existed for the claim under the policy. ECF No. 51-7 at pp. 6-7. Counsel concluded that coverage did not exist under the insurance policy for Plaintiff's loss. ECF No. 51-12. Specifically, counsel's coverage opinion, which was issued by letter dated May 4, 2017, concluded the following:

> The damage to structure at 1838 Hart Lane is not covered under the insurance policy. The insurance policy only provides coverage for sudden and accidental damage. Because the loss resulted from improper construction, it does not constitute an "accident" under Pennsylvania law. Moreover, the insurance policy specifically excludes damages that result from faulty, inadequate, or defective construction. Furthermore, collapse is excluded under the insurance policy except in very limited circumstance. The collapse of the carport does not fall within the limited circumstances for which coverage is afforded for a collapse.
>
> The damage to the contents at 1838 Hart Lane is also not covered under the insurance policy. Coverage for the contents must first result from an accidental event, and damage resulting from improper construction does not constitute an accident under Pennsylvania law. Moreover, in order for coverage to exist, damage to the contents must result from a named peril. The damage to the contents did not result from one of the named perils in the insurance policy. Even assuming the damage resulted from a named peril, coverage is excluded since the loss resulted from faulty, inadequate, or defective construction. Lastly, any coverage provided for the contents would be limited to ten (10) percent of the limit, since the contents were located off the residence premises.
>
> The damage to the structure at 1840 Hart Lane property is excluded under the insurance policy because it resulted from faulty, inadequate or defective construction. Importantly, the exclusion applies to faulty, inadequate, or defective construction on or off the residence premises. Furthermore, the damage to the structure was not the result of a sudden and accidental event. Specifically, as determined by the structural engineer, the damage to 1840 Hart Lane was long-term in nature.

7

> Allstate could void the insurance policy ab initio because it was procured through fraud, misrepresentation or concealment of a material fact. Specifically, the insured represented on the insurance application that that he owned the property when, in fact, his brother owned the property. This representation was material because the insurance policy would not have been issued if the insured did not own the property.
>
> Finally, Allstate could deny the claim because the insured misrepresented or concealed material facts during the adjustment of the claim. The insurance policy states that coverage is not afforded if the insured conceals or misrepresented any material fact. Due several misrepresentations during the adjustment of the claim, coverage could also be denied for this reason.

*Id.*

Allstate denied Plaintiff's insurance claim by letter dated May 12, 2017. ECF No. 51-13.

### III. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that "if the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," then a motion for summary judgment may be granted. F.R.C.P. 56.

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007); Fed. R. Civ. P. 56(c). As the Supreme Court has emphasized "[w]hen the moving party has carried its burden

8

under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* (quotation and citation omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

## IV. Discussion

Defendant contends that summary judgment should be granted as to Plaintiff's only remaining claim for bad faith on the following grounds: 1) because Allstate was correct in its coverage decision; 2) because Allstate had a reasonable basis for its coverage decision; 3) because Allstate relied upon the advice of experts; and 4) because Plaintiff misrepresented material facts during the adjustment of the claim. ECF No. 51.

Pennsylvania law provides a remedy for an insurer's bad faith conduct. The

statute provides, in pertinent part:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
>> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>>
>> (2) Award punitive damages against the insurer.
>>
>> (3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S. § 8371. "Under Pennsylvania law, a plaintiff can only recover for bad faith of an insurer under 42 Pa.C.S. § 8371 if he or she shows, by clear and convincing evidence, that the insurer: (1) did not have a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004) (citing *W.V. Realty, Inc. v. N. Ins. Co.*, 334 F.3d 306, 311 (3d Cir. 2003); *Keefe v. Prudential Prop. & Cas. Ins. Co.*, 203 F.3d 218, 225 (3d Cir. 2000)). "Although the term 'bad faith' is not defined by the Pennsylvania bad faith statute, Pennsylvania courts have interpreted it as 'any frivolous or unfounded refusal to pay proceeds of a policy.'" *Id.* (citing *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. 1994) (quoting Black's Law Dictionary 139 (6th ed. 1990))). Moreover, "Section 8371 is not restricted to an insurer's bad faith in denying a claim. An action for bad faith may extend to the insurer's investigative practices.'" *Condio v. Erie Ins. Exch.*, 899

A.2d 1136, 1142 (Pa. Super. 2006) (quotations and citation omitted).

"Bad faith must be demonstrated by clear and convincing evidence, a burden that applies even on summary judgment." *Mirarchi v. Seneca Specialty Ins. Co.*, 564 Fed. Appx. 652, 655 (3d Cir. 2014). "The 'clear and convincing' standard requires that the plaintiff show that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith. Thus, the plaintiff's burden in opposing a summary judgment motion is commensurately high in light of the substantive evidentiary burden at trial." *J.C. Penney Life Ins. Co.*, 393 F.3d at 367 (quotations and citations omitted).

Defendant contends that at the very least, it had a reasonable basis for its coverage determination in this case and thus, Allstate is entitled to judgment as a matter of law as to Plaintiff's bad faith claim. The Court agrees. The record indicates that Allstate conducted a thorough investigation of the claim and ultimately decided that coverage should be denied. Indeed, an Allstate property adjuster and an SIU adjuster inspected Plaintiff's loss; the claim was reviewed by an Allstate supervisor; Allstate took the recorded statement of Plaintiff and reviewed relevant property documentation from the City of Philadelphia; Allstate obtained the services of a structural engineer; and Allstate then sent the structural engineer's report, which opined on the cause of the loss, to independent legal

11

counsel for an opinion on the coverage. Finally, relying upon independent legal counsel's conclusion that coverage did not exist for Plaintiff's loss, Allstate denied Plaintiff's insurance claim. It cannot be said that Allstate's investigation and decision-making process was "frivolous or unfounded," as required under Pennsylvania law to succeed on a bad faith claim.

Plaintiff does not, and cannot, point to any evidence in the record that Allstate lacked a reasonable basis for denying benefits under the policy. The law is clear: the "standard requires that the plaintiff show that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." *J.C. Penney Life Ins. Co.*, 393 F.3d at 367 (quotations and citations omitted). Here, the factual record is devoid of any "clear, direct, weighty and convincing" evidence that would allow a factfinder to find "without hesitation" that Allstate acted in bad faith in investigating and ultimately denying Plaintiff's insurance claim. Thus, Allstate is entitled to judgment as a matter of law.

Moreover, even if Plaintiff could show by clear and convincing evidence that Allstate did not have a reasonable basis for denying benefits under the policy, the record is devoid of any evidence that Allstate either knew it had an unreasonable basis for denying coverage or recklessly disregarded its lack of a reasonable basis in denying Plaintiff's claim or in the manner in which it

investigated Plaintiff's claimed loss. To the contrary, the record makes clear that Allstate engaged not only a structural engineer but also independent legal counsel to assess whether Plaintiff's insurance claim was covered under the applicable policy. Allstate then relied on the independent findings of both the expert and legal counsel in its ultimate decision to deny Plaintiff's insurance claim. Thus, even construing Plaintiff's pleading and filings liberally in light of his *pro se* status, *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976), the Court finds that Allstate is entitled to judgment as a matter of law on Plaintiff's bad faith claim as Plaintiff has not, and more importantly cannot, meet the "commensurately high burden" to survive summary judgment on a bad faith claim under Pennsylvania law. Accordingly, Plaintiff's only remaining claim in this matter, his claim for bad faith, fails as a matter of law.

## V. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 51) will be granted. An appropriate Order follows.

DATED: 2-14-2020

BY THE COURT:

CHAD F. KENNEY, J.

13